COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia

**PUBLISHED**

JOSEPH CAMPBELL, ET AL.

OPINION BY
v.       Record No. 1476-23-4          JUDGE ROSEMARIE ANNUNZIATA
NOVEMBER 19, 2024

GROUNDWORKS OPERATIONS, LLC, ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Robert P. Coleman, Judge

Walter D. Kelley, Jr. (James S. McNider, III; Hausfeld LLP;
James S. McNider, III, P.L.C., on briefs), for appellants.

Benjamin Shook (John Bredehoft; Moore & Van Allen; Kaufman &
Canoles, P.C., on brief), for appellees.


Appellants Joseph Campbell, Todd Smith, Arturo Grandon, and Michael Beck appeal the

circuit court's judgment sustaining a demurrer to their claims under the Virginia Wage Payment

Act, Code § 40.1-29.[1]  They argue that the circuit court erred by concluding that the Act does not

authorize collective action suits based on the failure to pay "commissions."  We agree with

appellants.  Accordingly, we reverse the circuit court's judgment and remand for further

proceedings.

BACKGROUND

When reviewing the circuit court's judgment sustaining a demurrer, "we consider as true

the facts alleged in the [complaint] and the reasonable factual inferences that can be drawn from the

facts alleged."  *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023) (alteration in original)

(quoting *Eubank v. Thomas*, 300 Va. 201, 206 (2021)).

---

[1] A fifth plaintiff settled below.

Appellants are former employees of Groundworks Operations, LLC, which staffed affiliated companies, including JES Construction, LLC. Groundworks and JES are appellees in this action. Smith, Grandon, and Beck were "certified field inspectors" who were paid solely by commission on the sales they made. Their job was to travel to new customers' homes to sell construction services. Campbell was a service technician who was paid partially by commission. His job was to "repair previous installations and attempt to sell the existing customers additional goods and services." When appellants staffed JES, they conducted business in JES's name.

Appellees did not have a written commission policy until January 2022. Before then, appellees orally agreed to pay appellants commissions equal to ten percent of the gross sales price. Appellants received half of each commission after JES accepted a signed contract and customer deposit and the customer's three-day recission period had expired. They received the other half once the job was complete and the customer made final payment. The lag between the end of the recission period and the job's completion could last months. "As a matter of company policy, [appellees] refused to pay wages owed for jobs that remained unfinished on the employee's termination date." Campbell left Groundworks in June 2021, at which point he was owed $30,000 in commissions for sales he had secured but for which the job had not yet been completed.

In January 2022, appellees required all employees to sign a new written commission policy as a condition of their employment. The policy provided that appellants would not pay wages to their sales employees for jobs where the customer's final payment was not received within 14 days of the end of the worker's employment, regardless of whether the employee left the job involuntarily. Smith, Grandon, and Beck each signed the policy. They estimated that they had not been paid about "$20,000 each for jobs they sold but remained unfinished at the time their employment ended."

Appellants sued in March 2023, alleging that appellees violated the Virginia Wage Payment Act, Code § 40.1-29.  Specifically, appellants alleged that: (1) appellees violated Code § 40.1-29(A) by refusing to pay earned commissions upon the termination of appellants' employment; (2) appellees violated Code § 40.1-29(C) by deducting from commissions without appellants' written consent; and (3) appellees violated Code § 40.1-29(D) by requiring appellants to sign the agreement forfeiting their commissions as a condition of their employment.  Appellees demurred, arguing that commissions are not "wages" under the Act.  The circuit court agreed, so it sustained the demurrer without leave to amend.  Appellants timely appealed.

## ANALYSIS

"[W]e review a circuit court's judgment sustaining a demurrer de novo."  *Vlaming*, 302 Va. at 527 (quoting *Eubank*, 300 Va. at 206).  Whether the factual allegations sufficiently plead a cause of action is a question of law.  *Id.*

The Virginia Wage Payment Act falls under Chapter 3 of Title 40.1, which is entitled "Protection of Employees."  The Act provides that "[u]pon termination of employment an employee shall be paid all wages or salaries due him for work performed thereto."  Code § 40.1-29(A).  "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."  Code § 40.1-29(C).  And "[n]o employer shall require any employee . . . to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein."  Code § 40.1-29(D).  In 2020, the General Assembly added subsection (J) to the Act, which allows an employee to bring suit, either individually or collectively with similarly situated employees, against "an employer [who] fails to pay wages to an employee in accordance with

this section . . . to recover payment of the wages." Code § 40.1-29(J); 2020 Va. Acts chs. 868, 1038.

The Act does not define "wages." Nor is that term expressly defined elsewhere in Title 40.1. Contending that the term is ambiguous, appellants point to other parts of the Code and precedents defining "wages" in other contexts and contend that the term encompasses a broad range of employee compensation, including commissions. Appellees urge a narrower construction, arguing that Code § 40.1-2's definitions of "employee" as someone who works for "wages, salaries or commissions" and "employer" as one "who employs another to work for wages, salaries, or on commission" demonstrate that the General Assembly distinguishes "wages" from "commissions."

A statute is ambiguous if "the text can be understood in more than one way or refers to two or more things simultaneously . . . or lacks clearness or definiteness." *Blake v. Commonwealth*, 288 Va. 375, 381 (2014) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 n.8 (2006)). When a statute is ambiguous, the court is "called upon to interpret the meaning of those provisions and to ascertain and give effect to legislative intent. In doing so, we may avail ourselves of extrinsic evidence and the rules of statutory construction. We also examine [this code section] in the context of other closely related statutes." *Commonwealth v. Fairfax Cnty. Sch. Bd.*, 49 Va. App. 797, 803 (2007) (alteration in original) (quoting *Virginia-Am. Water Co. v. Prince William Cnty. Serv. Auth.*, 246 Va. 509, 514 (1993)). "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). We determine that intent "from the plain meaning of the language used." *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)). "A statute is not to be construed by singling out a particular phrase." *Eberhardt v.*

*Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 195 (2012) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 388 (1983)). Rather, we evaluate the statutory language in the context "of the entire statute" because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Eberhardt*, 283 Va. at 194-95). We "will not consider any portion [of a statute] meaningless unless absolutely necessary." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) (quoting *Logan v. City Council*, 275 Va. 483, 493 (2008)).

As an initial matter, we consider the purpose of the statute and hold that the 2020 amendment renders Code § 40.1-29 remedial. A statute is remedial if its "purpose is to 'provide protections to those otherwise not in a position to effectively defend themselves.'" *Neal v. Fairfax Cnty. Police Dep't*, 295 Va. 334, 343 (2018) (quoting *Bd. of Supervisors v. Rhoads*, 294 Va. 43, 51 (2017)). Before the 2020 amendments, the Act had two enforcement mechanisms. First, "[a]n employer who willfully and with intent to defraud fail[ed] or refus[ed] to pay wages" under the Act could be subject to criminal penalties. Code § 40.1-29(E). Second, the Commissioner of Labor and Industry could "institute proceedings on behalf of an employee to enforce compliance." Code § 40.1-29(F). Given those provisions, we previously held that the Act was "a regulatory not a remedial statute," reasoning that it "vest[ed] the Commissioner with discretion as to whether and how to pursue a claim on an employee's behalf." *Mar v. Malveaux*, 60 Va. App. 759, 770-71 (2012). That is, the Act did not confer on an employee the ability to "defend themselves"; rather, the employee protections were "incidental to the Commissioner's regulatory duty" and "only pursued at his discretion." *Id.* at 771. In so concluding, we expressly relied on the Act's lack of "a private right of action." *Id.* (quoting *Pallone v. Marshall Legacy Inst.*, 97 F. Supp. 2d 742, 745 (E.D. Va. 2000)).

We must now revisit our holding in *Mar* considering that the 2020 amendment added a private right of action as Code § 40.1-29(J). 2020 Va. Acts chs. 868, 1038. Employees may now pursue a claim directly against their employers independent of the Commissioner's discretion, giving them the ability to "defend themselves." *See Neal*, 295 Va. at 343; *Naidu-Mccown v. Emergency Coverage Corp.*, No. 3:23-cv-390-HEH, 2024 U.S. Dist. LEXIS 51608, at \*10-11 (E.D. Va. Mar. 22, 2024) (distinguishing *Mar* because it predated the 2020 amendment). As the circuit court recognized, that amendment superseded the analysis in *Mar* and transformed the Act into a remedial one.[2]

We construe remedial statutes "liberally." *Pompell v. Commonwealth*, 80 Va. App. 474, 481 (2024). In doing so, we read them "to suppress the mischief and advance the remedy in accordance with the legislature's intended purpose." *Neal*, 295 Va. at 343 (quoting *Univ. of Va. v. Harris*, 239 Va. 119, 124 (1990)). "All other rules of construction are subservient to that intent." *Id.* (quoting *Harris*, 239 Va. at 124). "The Virginia Wage Payment Act governs when and how employers must pay their employees." *Nestler v. Scarabelli*, 77 Va. App. 440, 466 (2023). We have previously held that "[t]he purpose of this statute is to protect employees from bad acting employers." *Id.*

The impact of Code § 40.1-2's definitions of "employer" and "employee" must be considered in light of that remedial purpose. Appellees ask us to hold that the "or" in Code § 40.1-2's definitions of "employer" and "employee" is disjunctive and distinguishes between wages, salaries, and commissions, implicitly arguing, therefore, that the General Assembly intended that workers who earn payment "on commission" fall outside the protections of the Act. But adopting that argument would impose an overly rigid construction that would frustrate the

---

[2] Although the circuit court correctly recognized the Act as remedial, it erroneously stated that remedial statutes must be construed "narrowly."

Act's remedial purpose. "[W]henever it is necessary to effectuate the obvious intention of the legislature, disjunctive words may be construed as conjunctive, and *vice versa*." *Williams v. Commonwealth*, 61 Va. App. 1, 10-11 (2012) (alteration in original) (quoting *S.E. Pub. Serv. Corp. v. Commonwealth*, 165 Va. 116, 122 (1935)).

It is clear that the legislature did not intend Code § 40.1-2's definitions of "employer" and "employee" to limit an employee's substantive rights under Code § 40.1-29 based on the manner in which he or she is compensated. Instead, Code § 40.1-2 establishes that an entity is an employer irrespective of how it pays its employees. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011) ("Authorities agree that . . . [']or['] has an inclusive sense as well as an exclusive sense."). The same is true at common law. *See Unemployment Comp. Comm'n v. Harvey*, 179 Va. 202, 215 (1942) ("Even at common law . . . the compensation of the employee may consist of commissions or a share of the profits of the employer's business."). Unquestionably, appellees were employers and appellants were employees because appellees paid commissions. Code § 40.1-2. Indeed, appellees paid three of the four appellants solely by commission. By withholding commissions that appellants earned, appellees engaged in the type of "mischief" the Act seeks to suppress, which is employers not paying employees the compensation those employees earned for the work they performed. *See Scarabelli*, 77 Va. App. at 466.

Moreover, accepting appellees' argument would distinguish between not only commissions and wages, but also between wages and salaries. The Act's first three subsections, all adopted in 1962, refer to "wages or salaries." Code § 40.1-29(A), (B), and (C). But the Act's last nine subsections, all reflecting later amendments, use only the term "wages." Under established Virginia law, when the General Assembly uses one word in one section of a statute and a different word in another section, we ordinarily presume the difference was intentional.

- 7 -

*Jordan v. Commonwealth*, 295 Va. 70, 75 (2018). But "[a]ll other rules of construction are subservient to" effectuating the intent of a remedial statute. *Neal*, 295 Va. at 343 (quoting *Harris*, 239 Va. at 124).

Applying an interpretation that excludes "salaries" from subsections (D) through (L) of the Act would undermine the statute's remedial purpose. After establishing in subsection (A) that an employer must pay "salaries and wages" to a terminated employee, the Act sets forth various remedies should the employer "fail to pay wages" under subsection (A). An employer may be subject to criminal penalties if he refuses to pay wages "willfully and with intent to defraud." Code § 40.1-29(E). Any employer who fails to pay wages under subsection (A) "shall be liable for the payment of all wages due," Code § 40.1-29(G), and if he does so "knowingly," he "shall be subject to a civil penalty not to exceed $1,000 for each violation." Code § 40.1-29(H). And further, subsection (J) creates a private right of action against an employer who "fails to pay wages to an employee in accordance with this section," under which a successful employee can be awarded liquidated damages, prejudgment interest, reasonable attorney fees and costs, and treble damages for a knowing violation. Code § 40.1-29(J). Thus, narrowly interpreting "wages" as appellees urge would defeat the statute's substantive protections for salaried workers. As discussed above, subsections (A) through (C) create nearly identical substantive protections for salaried and hourly employees, but under appellees' construction, the Act would provide a robust array of remedies for hourly employees while providing no remedy for salaried ones. We do not think that was the General Assembly's intent. *See Neal*, 295 Va. at 334.

A broad reading of the term "wages" to include the earned commissions at issue in this appeal also comports with the definitions given to each term by the courts that have addressed the issue. As far back as 1889, the Supreme Court, asked to interpret a statute intended "to

secure the payment of wages or salaries" of certain transportation employees, defined "wages" broadly as "compensation given to a hired person for his or her services." *Fidelity Ins., Trust & Safe Deposit Co. v. Shenandoah Valley R.R. Co.*, 86 Va. 1, 4, 8 (1889) (emphasis omitted). In 1996, quoting *Fidelity,* we applied that definition to a workers' compensation claim. *Commonwealth Dep't of Transp. v. Swiney*, 23 Va. App. 467, 470 (1996). We also favorably cited Black's Law Dictionary's definition of "wages, "as "compensation of employees based on time worked or output of production." *Id.* (emphasis omitted) (quoting *Black's Law Dictionary* 1416 (5th ed. 1979)). And we have since reaffirmed those definitions. *See B.P. Solar v. Jones*, 49 Va. App. 322, 326 (2007) (quoting *Swiney*, 23 Va. App. at 470). Indeed, "[e]very authority agrees that 'wages' are compensation paid for work performed or services rendered." *Swiney*, 23 Va. App. at 470 (citing 2 Arthur Larson, *The Law of Workmen's Compensation* § 60.12 (1986)); *see also Lundberg v. Delta Response Team, LLC*, No. 3:23cv00042, 2024 U.S. Dist. LEXIS 70985 (W.D. Va. Apr. 18, 2024) (applying our definitions of wages from *Fidelity Insurance* and *Swiney* and holding that "wages" are payments that are "earned" during time the employee worked and provided services to the employer); *Racklin v. Zeta Global Corp.*, 628 F. Supp. 3d 625, 647 (E.D. Va. Sept. 14, 2022)) (applying our definition in *B.P. Solar* to define "wages" under Code § 40.1-29).

Commissions fall squarely within those definitions of "wages." In an early case involving the payment of commissions the Supreme Court of Virginia found that the term "commissions" is "used to express compensation for services rendered," defining "commissions" as "a percentage on the amount of moneys paid out or received." *Home Beneficial Life Ins. Co. v. Unemployment Comp. Comm'n*, 181 Va. 811, 820 (1943) (quoting *Purifoy v. Godfrey*, 16 So. 701, 703 (Ala. 1894)).

That the term "wages" in the Virginia Wage Payment Act, Code § 40.1-29, includes "commissions" as one of the Code's protected forms of employee payment is evidenced by the General Assembly's passage of Code § 40.1-28.7:8, a covenant not to compete statute that refers only to "wages." It was enacted by the General Assembly the same year as Code § 40.1-29(J), 2020 Va. Acts chs. 948-49, and it expressly excludes the term "commissions" from "wages" in its definition of "[l]ow-wage employee." The legislature's specific exclusion of "commissions" from "wages" in the covenant not to compete statute is consistent with our interpretation today that the use of the word "wages" in the Act before us now includes commissions as one of the forms of payment the General Assembly intended be protected because the General Assembly did *not* exclude "commissions" from "wages" in the Act.

Further supporting our conclusion, the Virginia Department of Labor and Industry's Division of Labor and Employment Law March 2022 Field Operations Manual includes both forms of payment as intended to be protected under Code 40.1-29(D). Although the guidance manual refers to "wages, salaries, or commissions," the Department's overall conclusion is that "wages" as used in subsection (D) includes commissions. Manual § 1.00(D), https://perma.cc/S84Y-2QXC. The Manual provides that all commissions are recoverable under the Act and interprets Code § 40.1-29(D) as providing protection to employees paid by commissions, stating that "[n]o employer can require an employee . . . to enter into a contract or agreement . . . which requires the employee to forfeit his wages, salaries, or commissions," notwithstanding the fact that Code § 40.1-29(D) expressly refers only to "wages." Manual § 14.00(A)(2).

"[T]he construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts." *Bohle v. Henrico Cnty. Sch. Bd.*, 246 Va. 30, 35 (1993); *see also Nelson Cnty. Sch. v. Woodson*, 45 Va. App. 674, 678 (2005). The Department is

charged with enforcing Code § 40.1-29. Indeed, before the 2020 amendments, the Department alone could institute enforcement proceedings under the Act. Its interpretation, although not dispositive, is further evidence that "wages" includes "commissions."

In summary, we conclude that the Act's remedial purpose to protect the payment of employees for services rendered requires us to define "wages" broadly to include the payment of commissions for services rendered in the employee/employer relationship. *Pompell*, 80 Va. App. at 481; *cf. In re Green*, 34 F. Supp. 791, 793 (W.D. Va. 1940) (holding that "wages" under Virginia's bankruptcy exemptions included commissions and explaining that "'wages' must be given certainly the widest scope which is at all compatible with reason" to accomplish the law's public policy purposes). Here, the Act's remedy plainly is directed to an employer's failure to pay employees compensation they earned for work they performed. Thus, appellees' refusal to pay appellants the full commissions they earned as employees is redressable under the Act.

CONCLUSION

Recognizing that we must liberally construe the Virginia Wage Payment Act to effectuate its remedial purpose, we conclude that "wages" under Code § 40.1-29(J) includes commissions. Accordingly, we reverse the circuit court's judgment and remand to the circuit court for a full hearing and further proceedings consistent with this opinion.

*Reversed and remanded.*