COURT OF APPEALS OF VIRGINIA

Present:  Judges Ortiz, Raphael and Lorish
Argued at Fairfax, Virginia

PUBLISHED

GENESIS HAMMOND-SCHROCK

v.      Record No. 1771-24-4

COMMONWEALTH OF VIRGINIA

GENESIS HAMMOND-SCHROCK

v.      Record No. 1960-24-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STUART A. RAPHAEL
FEBRUARY 17, 2026

FROM THE CIRCUIT COURT OF WARREN COUNTY
Daryl L. Funk, Judge

(Aaron L. Cook; Cook Attorneys, on brief), for appellant.  Appellant
submitting on brief.

Samantha Meadows, Assistant Commonwealth's Attorney (Warren
County Commonwealth Attorney's Office, on brief), for appellee.

Amicus Curiae: Legal Aid Justice Center, Legal Aid Society of
Eastern Virginia, and House Opportunities Made Equal of Virginia,
Inc.; Alex Kornya (Victoria Horrock; Emily Smith; The Legal Aid
Justice Center, on brief), for appellant.

Amicus Curiae: Attorney General of Virginia (Jason S. Miyares,[1]
Attorney General; Meredith L. Baker, Deputy Solicitor General;
Kelci A. Block, Assistant Attorney General, on brief), for appellee.

To perfect an appeal from a general district court to the circuit court in a civil case,

Code § 16.1-107 generally requires the defendant to post an appeal bond in an amount sufficient

to satisfy the judgment.  Our appellate courts have long held that the failure to timely post the

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

appeal bond is a jurisdictional defect that bars the circuit court from proceeding. When required, the appeal bond must be posted in the general district court within 30 days from the judgment (or within 10 days in most unlawful-detainer cases). *See* Code §§ 8.01-129(A), 16.1-107(A)-(C). But some categories of litigants are exempt from the appeal-bond requirement. In 2007, the General Assembly added an exemption for indigent persons (except in certain types of cases not at issue here). 2007 Va. Acts ch. 869 (codified as amended at Code § 16.1-107(B)).

The questions here are how and when that indigency exemption should be determined and whether a general district court's ruling on that question is reviewable in the circuit court. Lower courts and commentators have noted the absence of authoritative guidance on these questions.[2] We conclude that the appellant here properly sought the exemption when she filed Form DC-409 in the general district court. We further conclude that the circuit court had the authority under Code § 16.1-114.1 to review the general district court's decision not to grant the exemption. We thus reverse the circuit court's decision to dismiss the appeal for lack of an appeal bond and remand the case to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

On February 5, 2024, the Commonwealth's Attorney for Warren County filed a petition in the general district court seeking possession of 16 animals owned by Genesis Hammond-Schrock. The 16 animals—13 dogs, 2 cats, and a horse—had been seized by sheriff's

---

[2] *See, e.g.*, *Wallin v. Buzzell*, 96 Va. Cir. 430, 433 (Lancaster 2010) ("The Court has been unable to find where the Code provides a procedure for how or when in the context of a *de novo* appeal there is to be a determination of indigency status of a defendant appellant."); Steven A. Krieger, *The Difficulty in Waiving the Appellate Bond Requirement for Indigent Defendants Appealing from General District Court to Circuit Court Pursuant to Virginia Section 16.1-107*, 27 Geo. J. on Poverty L. & Pol'y 389, 398 (2020) ("[I]t does not appear that any legal authority exists in Virginia dictating the time in which an indigent defendant must seek the status of an indigent party . . . .").

deputies the week before. The Commonwealth alleged that the animals "were neglected and in such a condition as to constitute a direct and immediate threat to their life, safety, or health in violation of Virginia Code [§§] 3.2-6503 and/or 3.2-6570." On March 14, 2024, the Commonwealth filed an amended petition for each of the 16 animals. Each amended petition was assigned a separate case number (C24-712 and C24-1007 to -1021).

The Commonwealth also issued multiple misdemeanor summonses to Hammond-Schrock arising from the seizure of the 16 animals (C24-796 to -807, and C24-811 to -827). The summonses alleged violations of Code §§ 3.2-6503 (care of companion animal), -6503.1 (care of agricultural animal), and -6570 (cruelty to animals). On March 20, 2024, the general district court granted Hammond-Schrock's request for the appointment of counsel to represent her on the criminal charges, finding that she "is indigent within the guidelines set forth in the law and is entitled to representation by court-appointed counsel." Hammond-Schrock's sworn application stated that she was unemployed, separated from her spouse, and had only 38 cents in her checking account.

As for the civil claims at issue here, the general district court granted Hammond-Schrock's *pro se* motion to continue those claims for trial alongside the criminal charges. Her motion represented that "[t]he civil case is entwined with the criminal case" and that the parties had agreed that the civil and criminal charges "should be heard at the same time."

At the joint trial that followed, the general district court found against Hammond-Schrock. The court imposed fines of $50 to $150 on each of the misdemeanor convictions, plus costs. The court also entered identical orders in the 16 civil-forfeiture cases:

- finding each of the 16 animals to have been abandoned, neglected or cruelly treated;

- granting custody to the Sheriff's Office to offer the animals for adoption or to dispose of them according to law;

- barring Hammond-Schrock from owning or possessing any animal for one year;

- ordering restitution for the care of the seized animals in an amount totaling $49,174.36, payable in $100 monthly installments; and

- setting an appeal bond for the 16 cases in the same amount—$49,174.36.

Before noting her appeals to the circuit court, Hammond-Schrock filed Form DC-409 in each of the 16 civil cases, requesting permission to "defend a civil case . . . without the payment of fees or costs." She represented having zero income and debts of $55,000. The general district court denied her request on August 21, entering identical orders. Each order recited that the court was "unaware of any costs or fees that were assessed" against her. The court noted that it "did award restitution[,] which is not subject to waiver pursuant to Virginia Code § 17.1-706." The court concluded that "because there is no action upon which relief can be granted related to costs and fees, the Petition is DENIED."

On August 22, 2024, Hammond-Schrock, by counsel, noted timely appeals of each of the civil and criminal orders. The same lawyer signed all the notices of appeal. On August 27, the clerk of the general district court transmitted the case papers in the civil and criminal cases to the clerk of the circuit court. The transmittal form stated: "Bond on civil violations not perfected ($49,174.36)."

On September 24, 2024, the Commonwealth moved the circuit court to dismiss the 16 civil cases on the ground that Hammond-Schrock "failed to post the ordered appeal bond within the [30] days prescribed . . . by . . . Code § 16.1-107." Hammond-Schrock's counsel filed a response asserting that his client had been "unable" to post the appeal bond, stating that Hammond-Schrock had been found indigent in the criminal cases and asserting that she was therefore exempt from the appeal-bond requirement under Code § 16.1-107(B). The Commonwealth countered that Hammond-Schrock had been adjudged indigent only in the criminal cases, not the civil cases. The Commonwealth argued that only the general district

- 4 -

court could determine her indigency status and that Hammond-Schrock had failed to object to the denial of her Form DC-409 petitions to waive fees and costs. The Commonwealth also suggested that the fact that defense counsel had entered an appearance in the civil cases showed that Hammond-Schrock was no longer indigent.

At a September 27, 2024 hearing, at which Hammond-Schrock and her criminal-defense counsel appeared, the circuit court entered an order setting the appeals for a two-day jury trial in February 2025. The order then recited, "Furthermore . . . CW motion to dismiss is granted on CR24/730-745 [the civil cases]. Pretrial conference on CR24-701 [through] CR24-729 [the criminal cases] is scheduled on January 10, 2025 at 9:00 am."[3]

On October 21, 2024, Hammond-Schrock's counsel filed a notice of appeal to this Court of the September 27 order, referencing the 16 civil cases. On October 22, the circuit court entered an order in the 16 civil cases reciting that:

> [F]or good cause shown and with objection noted by the Counsel for the Defendant, the Commonwealth's Motion for dismissal is GRANTED; and the appeal of the Petition for Ownership from the Warren County General District Court is DISMISSED by virtue of the Defendant's failure to properly perfect the appeal.

On November 21, Hammond-Schrock's counsel filed a "Second Notice of Appeal," referencing both the September 27 and October 22 orders. Although both notices of appeal represented that a transcript of the September 27 hearing would be filed, none was tendered.

ANALYSIS

Proceedings under the animal-forfeiture provisions of Code § 3.2-6569 are "civil" in nature despite that the statute incorporates criminal-like procedural protections such as requiring proof beyond a reasonable doubt. *See Mogensen v. Cnty. of Rockbridge*, ___ Va. App. ___, ___

---

[3] The Commonwealth advised at oral argument that the criminal charges have been continued for trial in February 2026.

- 5 -

(Jan. 27, 2026); *O'Malley v. Commonwealth*, 66 Va. App. 296, 301-02 (2016); *Settle v. Commonwealth*, 55 Va. App. 212, 222-23 (2009). Hammond-Schrock challenges the circuit court's ruling dismissing her appeal of the civil cases for failing to file an appeal bond under Code § 16.1-107(A). "Whether an appeal bond is required is an issue of law, involving statutory construction and review of our precedent, and therefore, we review the lower court judgment *de novo*." *Forte v. Dep't of Soc. Servs.*, 65 Va. App. 1, 5 (2015).

A. *The appeal in Record No. 1960-24-4 is properly before us.*

We start by resolving two threshold issues.

1. *The final order is the October 22, 2024 order.*

Our appellate jurisdiction in civil cases is generally limited to "final" orders of the circuit court, with limited exceptions not relevant here. *See* Code § 17.1-405(A)(3). Rule 1:1 defines when such an order is "final."

Hammond-Schrock filed two notices of appeal that resulted in two record numbers. She filed the first notice after the circuit court entered its September 27 order granting the Commonwealth's motion to dismiss. She filed the second one on November 21 after the trial court entered its October 22 order that both granted the motion to dismiss and actually dismissed her appeals of the animal-forfeiture orders.

We conclude that the October 22 order is the final order, not the September 27 order. The earlier order was not final because it failed to "dispose[] of the entire matter before the court" and "leave[] nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree." Rule 1:1(b). The September 27 order not only failed to dismiss the civil cases; it set a two-day jury trial at least for the criminal cases, without making clear that the civil cases were dismissed with prejudice.

- 6 -

In *Bibber v. McCreary*, 194 Va. 394 (1952), the Supreme Court observed that it had "consistently held that an order merely sustaining . . . a demurrer . . . is not final. An order sustaining such a demurrer, in order to be final . . . , must go further and dismiss the case." *Id.* at 395. That principle as applied to demurrers, pleas in bar, and summary-judgment motions was superseded by the 2018 amendment to Rule 1:1 that added subsections c and d. *See* Order (Va. Aug. 30, 2018), https://perma.cc/Q5WE-4C9S. Those subsections now provide that an order sustaining a demurrer or granting a plea in bar or a summary-judgment motion "is sufficient to dispose of a claim(s) or cause(s) of action . . . even if the order does not expressly dismiss the claim(s) or cause(s) of action at issue." Rule 1:1(c), (d). But the rule in *Bibber* was not superseded as to other orders that fail to "go further and dismiss the case." *Bibber*, 194 Va. at 395. For instance, "[i]n a civil case, an order which merely grants a motion to strike, without expressly entering summary judgment or partial summary judgment or dismissing the claim(s) or cause(s) of action at issue, is *insufficient* to dispose of the claim(s) or cause(s) of action at issue." Rule 1:1(e) (emphasis added). The trial court's September 27 order fell into an analogous category of non-final orders. Not only did it purport to set a trial date, but it failed to dismiss the civil cases, let alone dismiss them with prejudice.

The October 22 order, by contrast, both granted the Commonwealth's motion to dismiss and dismissed Hammond-Schrock's appeals in the civil cases. As that order left nothing further to be done in the civil cases, it was the final order, from which Hammond-Schrock timely noted her appeal in Record No. 1960-24-4. We will therefore dismiss her first appeal in Record No. 1771-24-4.

      2. *The Court can resolve this appeal without the hearing transcript.*

The second procedural wrinkle is whether we can reach the merits of Hammond-Schrock's appeal given that she failed to file the transcript of the September 27, 2024

hearing at which the Commonwealth argued its motion to dismiss. The Commonwealth insists that we cannot. To be sure, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii).

But the absence of a hearing transcript is not fatal to an assignment of error when, as here, the specific basis for the trial court's ruling and the appellant's objections to that ruling are evident in the record. *See, e.g.*, *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 382 (2016) (finding the transcript not indispensable when the record "sufficiently sets before the Court the pure issue of law" on appeal); *Shaw-McDonald v. Eye Consultants of N. Va., P.C.*, 79 Va. App. 576, 582 n.2 (2024) (finding the appellant's arguments in opposition to the motion to dismiss preserved in the written record and trial court's opinion, despite the absence of a hearing transcript), *aff'd on other grounds*, 304 Va. 164 (2025).

We are satisfied that we can review Hammond-Schrock's claim without the transcript of the motion-to-dismiss hearing. The Commonwealth moved to dismiss her civil appeals in the circuit court on the single ground that she "failed to post the ordered appeal bond within the [30] days prescribed . . . by Virginia Code § 16.1-107." Hammond-Schrock filed a written opposition expressly asserting the indigency exemption to the appeal-bond requirement in Code § 16.1-107(B). She added that the general district court had found her to be indigent and had appointed criminal defense counsel to represent her on the criminal charges that were paired for trial with the civil charges. The Commonwealth acknowledged that indigency determination but argued that it was limited "solely" to the criminal charges. The final order granted the Commonwealth's motion to dismiss and dismissed Hammond-Schrock's case for her "failure to properly perfect the appeal." The order also noted Hammond-Schrock's objection.

Thus, even without the September 27 transcript, we can discern the basis for the trial court's ruling and the grounds on which Hammond-Schrock contends the trial court erred. So we proceed to the merits.

### B. When a bond is required to appeal to the circuit court, the requirement is jurisdictional.

"At common law, there was no right to a de novo appeal of a lower court's factual findings and legal conclusions." *Robert & Bertha Robinson Family, LLC v. Allen*, 295 Va. 130, 151 (2018). Article VI, § 1 of the Virginia Constitution vests the judicial power "in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish." Except as provided in that section, however, "the General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." Va. Const. art. VI, § 1.

Our current system of courts "not of record" was reorganized in 1972, effective July 1, 1973. *See* 1972 Va. Acts ch. 708. Before "1973, courts not of record fell under the umbrella of the justice-of-the-peace system, which was composed of a variety of inferior courts with limited jurisdiction." *Allen*, 295 Va. at 144.[4] The reorganization was recommended by a study commission that found that the prior system of "county and municipal courts" had become "a morass of specialized jurisdiction with no central coordination and inefficient utilization of facilities and manpower." House Doc. 6, *Report of the Court System Study Commission* 10 (1971), https://perma.cc/P9LY-F3TU.[5] But preserving courts not of record was considered

---

[4] *See generally* Ralph P. Zehler, Jr. & C. Ridley Bain, *The Appeal De Novo in Virginia's Juvenile Court: Time for a Change?*, 4 Va. Bar Ass'n J. 17, 17-18 (1978) (discussing the historical origins of Virginia's two-tiered trial-court system).

[5] Prior law had established "four series" of courts—"county, city, town[,] and juvenile and domestic relations courts"—that were "distinguishable by the type of locality served, laws establishing them, degree of State supervision and methods of financing." *Report of the Court System Study Commission*, *supra*, at 25.

"essential to the State's judicial system." *Id.* at 24. "The vast majority of citizens gain their sole impression of the judicial system in the local court not of record," and "[t]he great majority of disputes [that] reach the courts are settled at this primary court level." *Id.*

The reorganization consolidated the functions of then-existing courts not of record into (1) general district courts and (2) juvenile and domestic relations district courts. *See* 1972 Va. Acts ch. 708; 1973 Va. Acts ch. 546. As before, a "two-tier trial system" enabled "a party aggrieved by a final judgment of the [court not of record] to have the case tried again by the circuit court as if the case originally had been instituted there." *Ragan v. Woodcroft Vill. Apartments*, 255 Va. 322, 327 (1998). "Such an appeal is in effect a statutory grant of a new trial, in which the perfected appeal annuls the judgment of the district court as completely as if there had been no previous trial." *Id.* *See also* Code § 17.1-513 (bestowing on circuit courts "appellate jurisdiction in all cases, civil and criminal, in which an appeal may, as provided by law, be taken from the judgment or proceedings of any inferior tribunal").

"'In case after case' involving appeals from courts not of record," however, our Supreme Court has "repeatedly said that '[t]he right of appeal is statutory and the statutory procedural prerequisites must be observed.'" *Allen*, 295 Va. at 144 (alteration in original) (quoting *Covington Virginian, Inc. v. Woods*, 182 Va. 538, 543 (1944)). "Absent a statutory authorization or a constitutional mandate, no party has a right to a de novo appeal . . . in the circuit court." *Id.* at 145.

One of the longstanding requirements to perfect an appeal to the circuit court from a court not of record has been the requirement for certain appellants to post an appeal bond. The bond requirement is currently found in Code § 16.1-107(A) for appeals from a general district court ("GDC"), and in Code § 16.1-296(A) for appeals from a juvenile and domestic relations ("JDR") district court. Appellants must also pay a writ tax. *See* Code §§ 16.1-106(B), -107(F),

- 10 -

-296.2. *See generally Hurst v. Ballard*, 230 Va. 365, 367 (1985) ("Unless the writ tax is paid to the district court clerk within 30 days from the judgment date, the district court has no authority to transmit the case to the circuit court. Thus, the intended appeal is not perfected and the circuit court does not obtain jurisdiction." (citation omitted)); Rule 7B:12(b) ("All parties are required to timely perfect their own respective appeals by giving a bond and paying the writ tax and costs, if any, in accordance with Code § 16.1-107.").

The appeal bond in a GDC appeal must include "an amount sufficient to satisfy the judgment," including "attorney fees, if any," Code § 16.1-107(A), plus "all costs and damages[6] [that] may be awarded against him in the appellate court," Code § 16.1-107(E).[7] When an appeal bond is required, it must be posted in the clerk's office of the district court within 30 days of the judgment, *see* Code §§ 16.1-107(A), -296(H), but within 10 days in certain unlawful-detainer cases, *see* Code §§ 8.01-129(A), 16.1-107(A)-(B). The district court transmits the appeal bond along with the "case papers" and other filed documents to the circuit court, which then dockets the appeal. *See* Code § 16.1-112.[8]

---

[6] The "damages" are 10% interest on the "aggregate" amount of the "judgment, including interest and costs," until paid. Code § 16.1-113; *see generally Moncrieffe v. Deno*, 76 Va. App. 488, 508 (2023) (describing the history of the "damages" provision).

[7] The bond requirement for an appeal from a JDR court is set forth in Code § 16.1-296(H) (requiring a bond "conditioned for the performance and satisfaction of such judgment or order as may be entered against the party on appeal, and for the payment of all damages which may be awarded against him in the appellate court").

[8] The bond requirement in Title 16.1 to obtain a trial de novo in the circuit court differs from the bond requirement under Code § 8.01-676.1 for appeals to the Court of Appeals and the Supreme Court. Appeals to those higher courts require a $500 "appeal bond" to secure the payment of costs, Code § 8.01-676.1(A), and an optional "suspending bond" (or irrevocable letter of credit) if the appellant wants to suspend execution of the judgment pending appeal, Code § 8.01-676.1(C). *See generally AV Auto., LLC v. Bavely*, 85 Va. App. 559, 605-06 (2025). "The failure to file a proper appeal bond . . . may result in the dismissal of the appeal," except that "'[n]o person who is an indigent shall be required to post security for an appeal bond.'" *Id.* at 606 n.23 (second alteration in original) (quoting Code § 8.01-676.1(N)). By contrast, an

- 11 -

The failure to post an appeal bond in the general district court when one is required can prove fatal to the circuit court's power to conduct a trial de novo. For instance, under the version of Code § 16.1-296(H) that was in effect when *Virginia Department of Social Services ex rel. May v. Walker*, 253 Va. 319 (1997), was decided, the Supreme Court held that the father's failure to post an appeal bond to cover the support award by the JDR court deprived the circuit court of jurisdiction, despite that the JDR court itself had failed to require any appeal bond.[9] *Id.* at 322. As the Supreme Court said in 1997, the appeal-bond requirements "always have been construed as mandatory . . . . We repeatedly have held that '[the] failure to substantially comply with the statutory requirements applicable to appeal bonds constitutes a jurisdictional defect [that] cannot be corrected after the expiration of the time within which an appeal may be taken.'" *Id.* (second alteration in original) (citation omitted) (quoting *Parker v. Prince William Cnty.*, 198 Va. 231, 235 (1956)); *Forte*, 65 Va. App. at 5 (same).

### C. The General Assembly has created several exemptions from the appeal-bond requirement without specifying the mechanism for asserting them.

As enacted in 1956, Code § 16.1-107 set forth several exemptions from the appeal-bond requirement: "when such appeal is proper to protect the estate of a decedent, an infant, a convict, an insane person, or the interest of a county, city or town, no bond shall be required." 1956 Va. Acts ch. 555, at 881. In 1978, the legislature amended the statute to also exempt the Commonwealth from having to post an appeal bond. 1978 Va. Acts ch. 501 (codified as amended at Code § 16.1-107(A)).

---

appellant who forgoes a suspending bond (or irrevocable letter of credit) may still pursue the appeal, but the judgment creditor may execute on the judgment in the meantime. *Id*. at 606.

[9] In 2007, the General Assembly superseded the rule in *Walker* by empowering circuit courts to "return the case to the district court" to enable the appellant to "post the required bond" when "the district court erroneously failed to require" one. *See* 2007 Va. Acts ch. 464 (adding Code § 16.1-109(B) and amending § 16.1-296(H) to cross-reference it).

In 1993, the General Assembly added the same appeal-bond exemptions for appeals from the JDR court. *See* 1993 Va. Acts ch. 970 (codified as amended at Code § 16.1-296(H)). The 1993 amendment, more broadly, exempted all other JDR-court appellants from the appeal-bond requirement "except for that portion of any order or judgment establishing a support arrearage or suspending payment of support during pendency of an appeal." *Id.*

In 1998, we held that the appeal-bond exemption for "a convict" could be asserted for the first time in the circuit court. *Frazier v. Dep't of Soc. Servs. ex rel. Sandridge*, 27 Va. App. 131, 135 (1998). The issue there was whether Frazier—an incarcerated person who lost his challenge to an out-of-state child-support order registered in the JDR court—was required to post an appeal bond to obtain a trial de novo in the circuit court. When Frazier failed to file the appeal bond, the circuit court granted the Department's motion to dismiss the appeal. *Id.* at 133. We reversed, relying on the appeal-bond exemption in Code § 16.1-296(H) for appeals to protect the estate of (among other persons) "a convict." *Id.* at 134. We said that the General Assembly "clearly expressed its intent to exempt members of the enumerated groups, including convicts, from [the appeal-bond] requirement." *Id.* at 135.

It was against this backdrop that the General Assembly in 2007 enacted the indigency exemption at issue here: "In all civil cases, except trespass, ejectment or any action involving the recovering [of] rents, no indigent person shall be required to post an appeal bond." 2007 Va. Acts ch. 869 (codified as amended at Code § 16.1-107(B)).[10] The legislature, however, did not specify how such indigency status would be determined or whether, as in *Frazier*, the exemption could be claimed for the first time in the circuit court.

---

[10] The same bill also eliminated the statutory right of defendants to remove a case from the general district court to the circuit court.

Those questions were not answered by the 2010 amendment that created a special rule for unlawful-detainer actions against an indigent "former owner based upon a foreclosure against that owner":

> In all civil cases, except trespass, ejectment, *unlawful detainer against a former owner based upon a foreclosure against that owner,* or any action involving the recovering rents, no indigent person shall be required to post an appeal bond. *In cases of unlawful detainer against a former owner based upon a foreclosure against that owner, a person who has been determined to be indigent pursuant to the guidelines set forth in § 19.2-159 shall post an appeal bond within 30 days from the date of judgment.*

2010 Va. Acts ch. 267 (codified as amended at Code § 16.1-107(B)) (amended language italicized). The second sentence in that paragraph gives a "former owner" unlawful-detainer defendant 30 days to post the appeal bond, rather than the 10 days allowed to other unlawful-detainer defendants under Code § 8.01-129(A). But that grace period was extended only to a former-owner tenant who "has been determined to be indigent pursuant to the guidelines set forth in § 19.2-159." *Id.* Code § 19.2-159 is the statute that governs whether an indigent defendant in a criminal case is entitled to court-appointed counsel.

Did the 2010 amendment intend for indigency determinations for persons covered by the first sentence to also be judged by the standards in Code § 19.2-159? And were such defendants required to apply to the general district court for an indigency exemption from the appeal-bond requirement within 30 days of the judgment? The answers were not apparent.

Our rules of court have not answered those questions either. Rule 7B:12(b) provides that "All parties are required to timely perfect their own respective appeals by giving a bond and paying the writ tax and costs, if any, in accordance with Code § 16.1-107." But the rule does not explain how or when the indigency exemption should be established. Other States with

two-tiered trial-court systems like Virginia's have clearer procedures for adjudicating an indigency exemption to the appeal-bond requirement.[11]

In 2025—the year after Hammond-Schrock noted her appeal to the circuit court—the General Assembly amended Code § 16.1-107 by adding subsection G: "For purposes of this section, 'indigent' means that the defendant *has been determined* to be indigent pursuant to the guidelines set forth in § 19.2-159." Code 16.1-107(G) (emphasis added). That amendment clarified that the indigency exemption from the appeal-bond requirement is to be determined by the same standards in Code § 19.2-159 governing whether a criminal defendant is entitled to court-appointed counsel. Counsel at oral argument here debated whether the use of the past-tense verb *has been determined* signaled that the general district court should determine such indigency in the first instance, or whether it simply meant that *a* court—whether the district court or the circuit court—must ultimately determine indigency.

We do not reach that question here because, as set forth below, we find that (1) Hammond-Schrock properly sought the indigency exemption in the general district court when she filed Form DC-409, requiring the general district court to determine whether she was entitled to that exemption, and (2) the circuit court committed reversible error by failing to review whether the general district court erred in failing to exempt her from the appeal-bond requirement.

---

[11] *Compare* Tex. R. Civ. P. 506.1(d) (providing mechanism for indigency exemption from the appeal-bond requirement to be considered first in the lower court with appeal of right to the higher court), *and* Ky. Rev. Stat. Ann. § 453.190 (establishing procedure for indigent persons to be exempted from cost and bond requirements), *with* Ga. Code Ann. § 9-15-2 (establishing procedure for indigent persons to be exempted from cost and bond requirements but providing that "[t]he judgment of the court on all issues of fact concerning the ability of a party to pay costs or give bond shall be final").

D. *Erroneous indigency determinations by a general district court are reviewable by the circuit court under Code § 16.1-114.1.*

The General District Court Manual, published by the Office of Executive Secretary,[12] instructs that litigants should use Form DC-409 (https://perma.cc/5F5V-EV6H) to assert their entitlement to the appeal-bond exemption:

> Appellant may request to be declared indigent *to avoid posting bond* or paying appeal fees. The DC-409: Petition to Proceed Without the Payment of Fees–Civil should be utilized upon this request.

General District Court Manual C-2 (2025), https://perma.cc/Y6WJ-8W2X (emphasis added).[13]

Consistent with that guidance, Hammond-Schrock properly sought the appeal-bond exemption in the general district court when she filed Form DC-409, asserting that she had no assets and that she had debts of $55,000. We find persuasive the court's analysis in *Wallin v. Buzzell*, 96 Va. Cir. 430 (Lancaster 2010). *Wallin* found that the indigent appellants there properly preserved their appeal-bond-exemption request in the general district court when they filed Form CC-1414, the circuit-court equivalent of Form DC-409,[14] even though the general district court never ruled on that motion. *Id*. at 432-33. The circuit court noted that "[l]itigants in the General District Court, particularly those who are *pro se*, proceed almost exclusively by the use of court forms." *Id.* at 432. The court was "unable to find where the Code provides a procedure for how or when in the context of a *de novo* appeal there is to be a determination of indigency status of a defendant appellant." *Id.* at 433. There was "no form for claiming

---

[12] "The Office of Executive Secretary to the Supreme Court . . . is . . . the court administrator for the Commonwealth." Code § 17.1-314.

[13] The 2025 version of the General District Court Manual did not alter the guidance in the 2024 manual to use Form DC-409 to assert the indigency exemption from the appeal-bond requirement. *See* General District Court Manual, *supra*, at E-4.

[14] *See* Form CC-1414 (Petition for Proceeding in Civil Case Without Payment of Fees or Costs) (rev. 7/21), https://perma.cc/ZWU7-H7YT.

indigency specifically for the purpose of proceeding with an appeal without posting the bond." *Id.* So the court found that the appellants' filing of Form CC-1414 in the general district court sufficed to preserve their entitlement to the indigency exemption. *Id.* The court acknowledged the Supreme Court's holding in *Greer v. Dillard*, 213 Va. 477 (1973), that a statute that allowed a court to waive "fees or costs" for an indigent person did not apply to waiving the appeal-bond requirement in Code § 16.1-107. *Wallin*, 96 Va. Cir. at 432-33. But the circuit court reasoned that this aspect of *Greer* had been superseded by the 2007 amendment that added the indigency exemption to Code § 16.1-107. *Id.* at 433.

*Wallin* further held that Code § 16.1-114.1 empowered circuit courts to review and correct the general district court's failure to exempt an indigent appellant from the appeal-bond requirement. *Id.* at 433. That code section provides:

> No warrant, motion or other pleading shall be dismissed by reason of a mere defect, irregularity or omission in the proceedings in the district court, or in the form of any such pleading, when the same may be corrected by a proper order of the court of record. In any such case the court of record shall retain the same, with full power to direct all necessary amendments, to enter orders and direct proceedings to correct such defects, irregularities and omissions, to promote substantial justice to all parties, and to bring about a trial of the merits of the controversy.

Code § 16.1-114.1.

We agree with the court's analysis in *Wallin* and hold that a general district court's denial of an indigency exemption from the appeal-bond requirement is reviewable de novo by the circuit court under Code § 16.1-114.1. "A circuit court's jurisdiction to sit as an appellate court is very limited." *Wright v. Commonwealth*, 52 Va. App. 690, 706 (2008). But reviewing a general district court's denial of an indigency exemption from the appeal-bond requirement fits

- 17 -

comfortably within the circuit court's power to correct "a mere defect, irregularity or omission in the proceedings in the district court."  Code § 16.1-114.1.[15]

We recognize that *Walker* held that an appellant's failure to post an appeal bond when one was required could not be cured by the circuit court under Code § 16.1-114.1.  *See Walker*, 253 Va. at 323 ("In the present case, the failure to post an appeal bond is not a 'mere defect, irregularity or omission in the proceedings;' rather, it is a fatal jurisdictional defect that cannot be cured." (quoting Code § 16.1-114.1)).  But this case, like *Wallin*, does not involve the appellant's failure to act in the general district court.  Code § 16.1-107(B), enacted a decade after *Walker*, exempts indigent appellants altogether from the appeal-bond requirement in cases like this one. Hammond-Schrock applied for that exemption when she filed Form DC-409 in the general district court.  The failure of the general district court to grant the exemption was thus reviewable by the circuit court under Code § 16.1-114.1 as a "defect, irregularity or omission in the proceedings."

Our interpretation of the statutory scheme is supported by our obligation to liberally construe remedial provisions like the indigency exemption at issue here.  A statute is remedial when its "purpose is to 'provide protections to those otherwise not in a position to effectively defend themselves.'"  *Neal v. Fairfax Cnty. Police Dep't*, 295 Va. 334, 343-44 (2018) (quoting *Bd. of Supervisors v. Rhoads*, 294 Va. 43, 51 (2017)).  Remedial statutes "must be 'liberally construed so that the purpose intended may be accomplished' and 'read so as to promote the ability of the enactment to remedy the mischief at which it is directed.'"  *Town of Iron Gate v. Simpson*, 82 Va. App. 38, 58-59 (2024) (quoting *Rhoads*, 294 Va. at 51).  Civil litigants who

_____

[15] We note—but do not rely on—the Commonwealth's concession of law at oral argument that a circuit court is empowered to review an erroneous determination by the general district court that the appellant is not entitled to the indigency exemption from the appeal-bond requirement.  *See, e.g.*, *Alexander v. Cobb*, 298 Va. 380, 388 (2020) ("[A] party cannot concede the law.").

- 18 -

cannot afford to post the bond required to appeal a case to the circuit court obviously cannot "effectively defend" their interests. *Neal*, 295 Va. at 343-44; *cf. Goldburg Co. v. Salyer*, 188 Va. 573, 577 (1948) ("[H]omestead exemption provisions are considered as remedial, and the rule is that they must be liberally construed in favor of the debtor and strictly against the creditor.").

With that remedial purpose in mind, we note that the general district court here correctly transferred the case papers to the circuit court even though Hammond-Schrock had not posted the appeal bond after the general district court denied her motion under Form DC-409. When a general district court declines to dispense with the appeal-bond requirement after an appellant has asserted the indigency exemption, the general district court should transfer the case papers to the circuit court to facilitate its appellate review under Code § 16.1-114.1. A contrary construction would make a general district court's ruling rejecting the appellant's claim of indigency effectively final and unreviewable. An indigent person could not afford the nearly $50,000 appeal bond that the general district court required here as a condition of de novo review in the circuit court.

*E. The circuit court erred in dismissing Hammond-Schrock's appeal.*

Applying those principles here, we find that Hammond-Schrock properly asserted her entitlement to the indigency exemption from the appeal-bond requirement when she filed Form DC-409 in the general district court. She did exactly what the General District Court Manual instructed indigent litigants to do in this situation. Hammond-Schrock expressly preserved her claim to the indigency exemption in the circuit court when opposing the Commonwealth's motion to dismiss her appeal. The circuit court was empowered under Code § 16.1-114.1 to review the general district court's failure to find her exempt from the appeal-bond requirement. And the circuit court should have found when conducting that review that the general district court erred in concluding that Hammond-Schrock's Form DC-409 was insufficient to request a

- 19 -

waiver of the appeal-bond requirement.  The circuit court thus erred when, without examining Hammond-Schrock's claim of indigency, the court dismissed her appeal for lack of an appeal bond.[16]

The Commonwealth posited below that Hammond-Schrock was no longer indigent when she noted her appeal to the circuit court.  The Commonwealth reasoned that "since the date of the determination of indigency on March 20, 2024, [Hammond-Schrock had] retained private counsel."[17]  It is true that Hammond-Schrock bore "the burden of proving an inability to pay." *Commonwealth v. Brawner*, ___ Va. ___, ___ n.3 (Dec. 18, 2025).  But a circuit court may not summarily dismiss an appellant's indigency claim under Code § 16.1-107(B) without evaluating her financial condition, especially when the general district court's prior indigency determination in the related criminal cases makes that claim highly plausible.  The Commonwealth is free on remand to contest Hammond-Schrock's assertion of indigency.[18]

---

[16] Hammond-Schrock did not raise any constitutional objections below.  Still, her amici warned at oral argument that requiring an appeal bond as a condition of seeking a trial de novo in the circuit court would deny indigent appellants their constitutional right to a jury trial, given that the 2007 amendment eliminated the statutory right to remove a case from the general district court.  Because we have resolved Hammond-Schrock's appeal on statutory grounds, however, we express no view about amici's constitutional arguments.

[17] Of course, the mere appearance by counsel in a civil case does not disprove a defendant's indigence.  As noted at oral argument, many lawyers handle matters pro bono, or a defendant's family or friends may have provided funds to retain counsel.

[18] Under the 2025 amendment, as noted above, the standard for determining indigency from the appeal-bond requirement is now the same as the standard for determining a defendant's entitlement to court-appointed counsel in a criminal case.  *See* Code § 16.1-107(G) (incorporating the standard in Code § 19.2-159).

CONCLUSION

In Record No. 1771-24-4, we dismiss the appeal because the order appealed from was not a final order. In Record No. 1960-24-04, we reverse the judgment and remand the case to the circuit court for further proceedings consistent with this opinion.

*Dismissed, Record No. 1771-24-4.*
*Reversed and remanded, Record No. 1960-24-4.*